IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROGER SMITH,

       Petitioner,

v.                                        CASE NO. 1:05-cv-00178-MP-AK

MONICA DAVID, et al.,

       Respondents.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 16, Amended Petition for Writ of Habeas Corpus, filed by Roger Smith.  Petitioner was previously granted leave to proceed *in forma pauperis*. Respondents have filed their responses, Docs. 27 & 29, and Petitioner has filed his reply.  Doc. 30.  This cause is therefore in a posture for decision.[1]  Having carefully considered the matter, the Court recommends that habeas relief be denied.

## BACKGROUND

In 1982, Petitioner was sentenced by the Circuit Court of Duval County, Florida, to two consecutive life sentences for burglary with a dangerous weapon and sexual battery with a deadly weapon.  In 1985, he was sentenced by the Circuit Court of Sumter County, Florida, to a consecutive sentence of one year and one day for escape.   Doc. 27, Ex. A.

After serving 17 years in custody, Petitioner was released on October 13, 1998, by the

---

[1]The Attorney General of the State of Florida was previously dismissed from this action. Doc. 46.

Florida Parol Commission to parole supervision for life.  Doc. 27, Ex. B.  Two of the conditions

of Petitioner's parole were that he neither change his residence nor leave the county of residence

without first securing permission from his parol officer.  *Id.*

On July 3, 2002, the Commission issued a warrant for retaking paroled prisoner, charging

that Petitioner had changed his residence and had left his county of residence without first

securing the consent of his parole officer.  Doc. 27, Ex. C.  Petitioner waived preliminary

hearing, and a final hearing was set for November 21, 2002.  *Id.*

According to the summary of the hearing, Petitioner testified that he called his parole

officer after leaving the county of residence, Martin County, and "told him where he was at."

Petitioner stated "that he left and didn't get permission before he left the county but did call after

getting to Panacea, Florida."  He further stated that "it wasn't his intention to get out from under

parole supervision, but he had to get away from the person he was living with."  Petitioner also

testified that he called his parole officer, who told Petitioner to call him back, which Petitioner

did.  *Id.*

The hearing summary also indicates that Petitioner's parole officer testified

telephonically.  The officer stated that he learned that Petitioner was in Wakulla County from the

Sheriff's Office.  He further stated Petitioner later called him "and admitted to him that he had

moved up to Wakulla County without permission."  *Id.*

In his concluding statements, Petitioner told the hearing officer that "he wasn't trying to

avoid supervision because he had been out almost four years and didn't violate and didn't even

get a speeding ticket."  He further stated that he left Martin County "to get away from the woman

he was living with and wanted to get away from that situation."  The officer agreed that

Petitioner "did not have any other violations that he was aware of," but he recommended revocation nonetheless "based on the serious nature of the violations in light of the parolee being a sex offender...." *Id*.

The hearing officer found Petitioner guilty of both charges and recommended revocation based on two considerations: (1) the fact that the parole officer recommended revocation "based on the nature of the violations," and (2) the fact that Petitioner "could have easily notified his parole officer of any problems with his residence before absconding to a different part of the state." *Id*.

The summary concluded with a notation that an NCIC/FCIC check "was done and no new criminal arrests were noted." *Id*.

The Commission subsequently accepted the recommendation, revoked Petitioner's parole, and returned him to the custody of the "Superintendent of the State Prison, there to remain not to exceed his/her sentence or until further order of the Commission." *Id*.

Thereafter, Petitioner filed a petition for writ of habeas corpus state court, claiming that the Commission failed to follow the requirements of law in that it failed (1) to follow established guidelines to make its determination, (2) to consider mitigating circumstances, and (3) to give written reasons for its decision, and that the revocation was an abuse of discretion.  Doc. 27, Ex. D.  The court found that Petitioner "failed to demonstrate an entitlement to relief" in that the attachments to the habeas petition showed the reasons for the revocation and that he had not demonstrated an abuse of discretion.  *Id*.  Petitioner's request for certiorari was per curiam denied without opinion by the court of appeal.  *Smith v. Florida Parole Commission*, 856 So.2d 985 (Fla. Dist. Ct. App. 2003).

Subsequently, Petitioner filed another petition for writ of habeas corpus, charging that his

receipt of the hearing summary and violation report after denial of the original petition

constituted new evidence which he should be allowed to bring before the court.  Doc. 27, Ex. E.

According to Petitioner, this new evidence supported three additional claims for violation of his

due process rights: (1) failure to disclose evidence used against Petitioner, (2) denial of

meaningful opportunity to present a defense to the charge of changing residence without

permission, and (3) denial of meaningful opportunity to present mitigating circumstances and

alternatives to revocation.  *Id*.  The court considered the new evidence and found that "Petitioner

had not established that the Commission abused its discretion or denied him due process of law

in revoking his supervision."  *Id*.  It therefore denied the habeas petition.

Petitioner again sought certiorari from the appellate court, and on this occasion, the court

found that the lower court "erred in denying Smith's petition for writ of habeas corpus without

affording him the opportunity to reply to the Commission's response."  Doc. 27, Ex. F.  It

therefore quashed the lower court's order and remanded with directions to reconsider the matter

after affording Petitioner an opportunity to file a reply.  *Id*.  It did not address any other issues.

*Id*.; *see also Smith v. Florida Department of Corrections*, 882 So.2d 1090 (Fla. Dist. Ct. App.

2004).

On remand, Petitioner filed a reply, contending that the standard of review suggested by

the Commission did "not encompass the merits of the claims presented," that the Commission's

statement of facts omitted critical information, and the Commission's argument was contrary to

law and fact.  *Id*.  The court reiterated its previous finding that Petitioner had not established that

the Commission abused its discretion or denied him due process in revoking his parole

supervision. *Id.* The court of appeal per curiam denied the petition for writ of certiorari "on the

merits." *Id.*; *see also Smith v. Florida Department of Corrections*, 903 So.2d 195 (Fla. Dist. Ct.

App. 2005).

The instant § 2254 petition ensued. In the amended petition, Petitioner raises five claims,

each of which will be discussed in turn.

## DISCUSSION

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state

court adjudication

(1)     resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if

the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a

set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A

state-court decision will certainly be contrary to...clearly established precedent if the state court

applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*,

529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme

Court precedent "if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the

Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from [Supreme

Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

at 413. The federal court considering a habeas petition "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative

of clearly established federal law. Instead, this Court must look to the specific holdings of

Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the

issue at hand, then the state court's decision is not contrary to or an unreasonable application of

clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166

L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the

state court's factual determinations are correct, and the petitioner bears the burden of rebutting

the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see*

*also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's

rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary*

*for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the

Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all

that is required for a state-court adjudication on the merits is a rejection of a claim on the merits,

not an explanation.  *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for

habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of

the federal constitution.  *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d

783 (1982);  *Branan v. Booth*, 861 F.2d 1507, 1508 (11ᵗʰ Cir. 1989).  This limitation on federal

habeas review applies equally when a petition which truly involves only state law issues is

couched in terms of alleged constitutional violations.  *Branan*, 861 F.2d at 1508; *see also*

*Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3ʳᵈ Cir. 1997) (errors of state law cannot be

repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have

exhausted their claims in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing

28 U.S.C. §§ 2254(b)(1) & (c)).  To fully exhaust state remedies, "state prisoners must give the

state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process."  *Id*. at 845.  In addition, "the federal

claim must be fairly presented to the state courts," and it must be "the same claim."  *Picard v.*

*Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995)

(citing *Picard*).

Claims which have not been fairly presented to the state court but are defaulted from

state court review are considered technically exhausted because no remedies are available for

purposes of § 2254(c).  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  *See also White v.*

*State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on

post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

The law regarding the due process accorded to a parolee or probationer in a revocation proceeding is clearly established in certain particulars.  For example, the following minimum requirements of due process must be provided:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972).  "These requirements in themselves serve as substantial protection against ill-considered revocation."  *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973).  A revocation hearing does not "equate...to a criminal prosecution in any sense," *Morrissey*, 408 U.S. at 489, and thus, the full panoply of rights afforded to the criminal defendant are not afforded to one facing revocation.

At a parole or probation revocation hearing, the State must prove a violation was "willful and substantial" only by a preponderance of the evidence.  *Hanania v. State*, 855 So.2d 92, 94 (Fla. Dist. Ct. App. 2003); *Staley v. State*, 851 So.2d 805, 806 (Fla. Dist. Ct.

App. 2003). "It is the hearing officer's function to consider all the evidence presented,

resolve conflicts, judge credibility of witnesses, draw permissible inferences from the

evidence, and reach ultimate findings of fact based on competent, substantial evidence."

*Heifetz v. Department of Business Regulation,* 475 So.2d 1277, 1281 (Fla. Dist. Ct. App.

1985); *see also Richardson v. Florida Parole Commission*, 924 So.2d 908 (Fla. Dist. Ct.

App. 2006) (relying on *Heifetz* to find that Commission improperly re-weighed evidence

in rejecting examiner's conclusions).

>    1.    "The Petitioner's 14th Amendment rights were violated by an inaccurate
>          hearing summary in revocation proceedings."

In this claim, Petitioner charges that the hearing summary was inaccurate in the

following ways:

>    (1) the reference to the parole officer's violation report implies that the
>    report "was exhibited and subjected to cross-examination";
>
>    (2) Petitioner did not admit to moving from Martin County to Wakulla
>    County, but instead, testified "that he stayed in Wakulla until Monday,
>    June 24th when he called his parole officer, explained where he was, why
>    he was there, and requested permission to move";
>
>    (3) the parole officer did not testify that Petitioner admitted over the phone
>    that he had moved, but instead, testified that Petitioner "informed him that
>    he left Martin County on June 20th, 2002, stayed at a friend's home until
>    June 24th, 2002, when he called";
>
>    (4) the hearing officer omitted Petitioner's testimony that "he asked his
>    parole officer for permission to relocate and was told by the parole officer
>    to remain in Wakulla County given the domestic situation at his home";
>
>    (5) the hearing officer incorrectly stated that there were no stipulations at
>    the hearing, when, in fact, "a stipulation to consideration of an NCIC
>    check after the hearing was in fact agreed upon."

In Petitioner's estimation, these inaccuracies deprived him of a meaningful

hearing, denied him "his right to both defend and explain away the seriousness of the charges" and "consideration of the mitigating factors of both the circumstances of his behavior and intentions," and left open "the questions of the Petitioner's willingness and ability to comply with conditions in the future."

While it arguably might have been a violation of Petitioner's due process rights if the examiner had relied solely on the parole officer's violation report, *cf. Gholston v. Jones*, 848 F.2d 1156 (11ᵗʰ Cir. 1988) (revocation based solely on unsworn parole violation report by parole officer denied parolee due process right to confront adverse witnesses), this was not the case here, as the officer appeared telephonically and was subject to cross-examination.  Petitioner does not claim that he was not given notice of the charges against him or that he was not fully advised of the evidence to be used against him at the hearing.  He also cannot credibly deny that he was in fact allowed to present evidence to explain the circumstances of his removal from his known residence.  Rather, he primarily objects to the examiner's conclusions which obviously discounted or found incredible Petitioner's explanations for leaving his residence and traveling a significant distance without contacting his officer until some days later.  The drawing of reasonable inferences from the evidence and the judging of the witnesses' credibility are plainly within the purview of the examiner and do not touch on the question of whether instant Petitioner was afforded due process.  Further, the issue of whether there was a stipulation regarding an NCIC check is patently irrelevant to the due process question since it is undisputed that an NCIC check, which supported Petitioner's contention that he had not been in any trouble since his release from prison, was performed.

In sum, none of the matters about which Petitioner complains in this ground show

that Petitioner was denied a meaningful hearing or otherwise support a violation of his

due process rights, and thus, the state court's conclusions are neither contrary to nor an

unreasonable application of clearly established Supreme Court law.

> 2. "The Petitioner's 14th Amendment rights were violated by examiner's ex parte consideration of and addition of evidence."

In this claim, Petitioner charges that the examiner improperly considered the

parole officer's violation report, as it was not exhibited at the hearing and the examiner

did not request a stipulation for its considerations after the hearing.  According to

Petitioner, this report deprived him of due process in several ways.  First, "it contains

exculpatory information that the Petitioner was still lawfully registered in Martin County

and had not yet changed address."  Second, it erroneously states that Petitioner "told his

parole officer he had permanently moved."  In Petitioner's view, "[T]his statement in the

report appears to be from where the examiner draws his information to insert in the

parole officer's testimony on the summary."  Third, the report includes hearsay

statements alleging that Petitioner "had taken up residence in Wakulla County."

According to Petitioner, if he had "been afforded the opportunity" to call the law

enforcement officers who investigated his presence in Wakulla County, they would have

supported his contention that he was "in transit" and was "awaiting his parole officer's

instructions as to whether he was to remain in Wakulla or return to Martin County."

Petitioner charges that "[a]s a result of the withholding of this report and its consideration

after the hearing, [he] was blindsided by the parole officer's ulterior motivations and

actions...."  He also claims that the violation report contains other erroneous information,

including a claim that he was sporadic in reporting, was in arrears in his payments for

supervision, and was a "'serious threat to society,'" which were inserted only to support

the officer's recommendation of revocation.

While the report was certainly included in the revocation packet which went to

the Commission in determining whether to issue an arrest warrant for Petitioner and the

Court will not dispute Petitioner's contention that the report was attached to the

examiner's conclusions, there is otherwise nothing in the record to suggest that the

violation report informed the examiner's decision in any way.  Instead, the examiner

plainly stated that his decision rested only on the sworn testimony of Petitioner and the

parole officer.  Petitioner's suggestion that he was denied witnesses at the hearing is not

supported in the record, which plainly shows he was informed of his right to have

witnesses testify on his behalf.

This claim is likewise without merit, as thus, the state court's decision is neither

contrary to nor an unreasonable application of Supreme Court law.

> 3.  "The Respondents' procedures providing for bifurcated hearings and ex
>     parte decision making violate the Petitioner's 14th Amendment rights."

In this claim, Petitioner charges that the procedures established by Florida statute

for a hearing officer to hear the evidence initially in a parole revocation situation and to

submit a recommendation for final decision by the Commission, which then considers the

recommendation but does not entertain further evidence, violate due process.

This claim is without merit.  With regard to the revocation hearing, *Morrissey*

requires only the opportunity to be heard in person and to present witnesses and

documentary evidence, the right to confront and cross-examine adverse witnesses, and a

"neutral and detached" hearing body.  *Morrissey*, 408 U.S. at 488-89.  Petitioner does not

suggest that his hearing before the examiner violated any of these tenets, but instead,

argues that he should have been given a second hearing before the full Commission.

There is absolutely no requirement in *Morrissey* or its progeny that a parolee facing

revocation be given two "final" hearings before two different bodies.  Thus, the state

court decision denying Petitioner relief was neither contrary to nor an unreasonable

application of clearly established law.

> 4.      "The revocation order violates minimum requirements of due process
>         providing no reasons why revocation was necessary."

The revocation order stated the reasons for the revocation–Petitioner left Martin

County and moved to Wakulla County without permission–and why it was necessary--the

"best interests of society and the parolee."   This is sufficient to meet the demands of the

Fourteenth Amendment, and thus, the state court's decision was not contrary to or an

unreasonable application of Supreme Court law.

> 5.      "The Petitioner was denied judiciary process by the 3rd Judicial Circuit,
>         Lafayette County, Florida, and the First District Court of Appeal of
>         Florida."

In this claim, Petitioner charges that the state courts failed to require the

Commission to meet the minimum requirements of due process in his revocation

proceedings and then improperly held that "a written statement of evidence relied upon to

establish guilt for violations also doubles as written reasons for finding revocation

necessary."  The courts also failed to require the Commission to product the actual record

of the hearing "where the accuracy of the second hand, written summary was at issue."

Petitioner also charges that the courts failed to review his claims of examiner misconduct

concerning violations of agency rules.  In short, neither court "afforded the Petitioner

proper review of the Respondents' revocation, the Respondents' procedures, or the

Respondents' compliance with due process."

This Court does not sit as a super-appellate court to review the findings of state

courts.  Instead, it is statutorily confined by § 2254(d) to examine only whether the state

court adjudications resulted in decisions (1) which were contrary to or involved an

unreasonable application of United States Supreme Court law or (2) that were based on

an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings.  As previously discussed, none of Petitioner's due process claims have

merit, and therefore, his claim that the state courts failed properly to review his claims is

also without merit.  The failure to rule in his favor does not mean the state courts did not

afford him a full and fair review of his claims.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the amended

petition for writ of habeas corpus, Doc. 16, be **DENIED**, and this cause be **DISMISSED**

**WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this   _10ᵗʰ_  day of March, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**